879 P.2d 779

**TEAM BANK, a corporation, as Trustee for the San Juan Basin Royalty Trust, Plaintiff–Appellee,**

v.

**MERIDIAN OIL INC., a corporation, and Southland Royalty Company, a corporation, Defendants–Appellants.**

No. 20892.

Supreme Court of New Mexico.

Aug. 8, 1994.

**148**

Campbell, Carr, Berge & Sheridan, P.A., Michael B. Campbell, Michael H. Feldewert, Santa Fe, for appellants.

Gallegos Law Firm, P.C., J.E. Gallegos, Santa Fe, for appellee.

**OPINION**

FRANCHINI, Justice.

We granted an interlocutory appeal to Defendants Meridian Oil Inc. and Southland Royalty Co. ("Southland") from an order denying a motion to dismiss for improper venue. Team Bank, a corporation acting as Trustee for the San Juan Basin Royalty Trust, seeks monetary damages from Southland in a suit for breach of contract brought in Rio Arriba County. Team Bank alleges that Southland has underpaid royalties on natural gas production in Rio Arriba and other counties. We find that the trial court improperly denied the motion to dismiss, reverse the trial court, and remand for dismissal of the cause of action without prejudice.

*Facts and proceedings below.* Southland and Team Bank are Texas residents. Southland is the settlor, or creator, of an oil and gas royalty trust that is to receive royalties from oil and gas leasehold interests, royalty interests, and overriding royalty interests Southland owns in the San Juan Basin. The Trust is to collect the assets produced by the interests, convert them to cash, and distribute the cash to unit holders of the Trust. In 1980 Southland and Team Bank entered into a contract in Texas whereby Southland was to collect the proceeds from the sale of the oil and gas produced from certain lands in the Basin and pay to Team Bank, as Trustee, 75% of the net proceeds as an overriding royalty interest.

In 1992 Team Bank brought suit for breach of contract, alleging underpayment of royalties. Southland moved for dismissal of the suit on the basis of improper venue. At the hearing on the venue motion Team Bank withdrew its claims for divestiture and partition. Relying on *Fullerton v. Kaune,* 72 N.M. 201, 205, 382 P.2d 529, 533 (1963) (stating that funds resulting from the sale of production of a mineral well are realty interests), and NMSA 1978, Section 38–3–1(D)(1) (Cum.Supp.1993) (mandating venue in the county where real property is located when an interest in land is the object of the suit), the trial court found venue to be proper in Rio Arriba County. Alternatively, the court found that the subject contracts were performed in part in Rio Arriba County, and

therefore, under NMSA 1978, Section 38–3–1(F) (allowing suit against foreign corporations to be brought in the county where the contract is to be performed), venue also was proper.

■ *Venue in New Mexico is not mandatory under NMSA 1978, Section 38–3–1(D)(1).* Under NMSA 1978, Section 38–3–1(D)(1), it is mandatory to bring all civil actions involving a dispute "[w]hen lands or any interest in lands are the object of any suit in whole or in part ... in the county where the land ... is situate." Team Bank argues that an action to determine the nature and extent of royalty interests has as its object an "interest in land" for venue purposes, citing to *Fullerton* for authority. In *Fullerton* the plaintiffs claimed ownership of a royalty interest in an oil and gas well, thus the trial court correctly held that the suit was for an interest in realty such that the statute of frauds applied to the contract. 72 N.M. at 205, 382 P.2d at 533. *Fullerton*, however, does not dispose of the issue in this case, which is: What is the object of this suit?

■ Southland argues that the Trust does not own an overriding royalty interest but rather only a "net profits interest" in the proceeds of the royalty. We disagree. The Conveyance, by its express terms, conveys a "net overriding royalty interest ... in and to the Minerals in and under, and if, as and when produced, saved and sold from, the Subject Lands ... equal to ... (75%) of the Net Proceeds attributable to the Subject Interests...." The fact that the value of the royalty interest is measured by a percentage of the net proceeds does not change the fact that the royalty interest itself was conveyed. Further, the Indenture states that a reason for the creation of the Trust was to avoid conveying legal title of an interest in the royalties to each shareholder, and that the royalties would instead be conveyed to the Bank as trustee.

■ Although an overriding royalty interest is an interest in real property, *see Uhden v. New Mexico Oil Conservation Comm'n*, 112 N.M. 528, 530, 817 P.2d 721, 723 (1991) (stating that "a grant ... of royalty rights ... in a mineral lease ... is a grant ... of real property"), the controlling issue is whether the royalty interest is the *object* of the suit at bar such that venue is mandatory in Rio Arriba County. We hold that it is not. The suit is not for a declaratory judgment to determine ownership of the royalty; it is for breach of contract to determine whether the correct amount of royalties has been paid. The *object* of the suit is not to establish an interest in the real property but to recover money owed by Southland. This is a transitory action, *see* NMSA 1978, Section 38–3–1(A), and venue was not mandatory in New Mexico under Section 38–3–1(D)(1). *Cf. Naumburg v. Cummins*, 98 N.M. 274, 275, 648 P.2d 313, 314 (1982) (holding that suit that *could* affect the title or ownership of land had as its object "an interest in land" under Section 38–3–1(D)(1)); *see also Jemez Land Co. v. Garcia*, 15 N.M. 316, 321, 107 P. 683, 684 (1910) (stating that venue in county where land not situated proper if claim for damages was the sole object of suit); *Rito Cebolla Invs., Ltd. v. Golden West Land Corp.*, 94 N.M. 121, 123, 607 P.2d 659, 661 (Ct.App.1980) (holding that suit for damages for misrepresentations made in sale of real estate is a transitory action; Section 38–3–1(D)(1) did not control because action did not affect the title to or ownership of the property); M.E. Occhialino, *Walden's Civil Procedure in New Mexico* 2–19 (2d ed. 1988) (stating that "where the action, though related in some way to land, will not have an impact on title, there is no need to require the action to be brought where the land is located").

■ *Venue is not proper under NMSA 1978, Section 38–3–1(F).* In causes of action against foreign corporations in which no other mandatory rule applies, the proper venue rule is NMSA 1978, Section 38–3–1(F). This section states in part that venue is proper "in the county where the contract sued on was made or is to be performed or where the cause of action originated." It is uncontroverted that the contract in this case was made in Texas, and the contract specifically provides that payment of the royalties is to be made in Texas. Further, no liability for breach of the contract would attach until the royalty payments became insufficient for

some reason. Because production of some of the gas and its measurement, however, among other things, took place in part in Rio Arriba County, the district court found that "the contract is to be performed at least in part in Rio Arriba County" and held that venue thus was proper under Section 38–3–1(F).

■■■ Venue "relates to the convenience of litigants," *Neirbo Co. v. Bethlehem Shipbuilding Corp.*, 308 U.S. 165, 167, 60 S.Ct. 153, 154, 84 L.Ed. 167 (1939), and "reflect[s] equity or expediency in resolving disparate interests of parties to a lawsuit in the place of trial," *Burlington Northern R. Co. v. Ford*, 504 U.S. 648, ——, 112 S.Ct. 2184, 2186, 119 L.Ed.2d 432 (1992). In transitory actions the venue rules reflect an attempt to balance the common-law right of a defendant to be sued in his most convenient forum (usually the county of his residence) with the right of the plaintiff to choose the forum in which to sue. *See id.* at —— – ——, 112 S.Ct. at 2186–87. The plaintiff's right to choose the forum does not become compelling until the suit is filed in a proper forum. In New Mexico the Legislature has expressed its intent to give foreign corporations that are admitted to do business and that have designated and maintained a statutory agent in this state the same "weight" in the venue balance as resident defendants. *Compare* § 38–3–1(A) *with* § 38–3–1(F). We are faced with the question of whether to give the words "where the contract sued on ... is to be performed" a broad construction that would allow suit in any county where *any part* of the contract might be performed or to give it a narrow construction such that suit could be brought only in the county or counties where a primary or principal activity is to take place. We believe that the latter construction is preferable for two reasons. First, the statutory provision is "an exception to the general rule that an action on contract is triable in the county of defendant's residence," 92 C.J.S. *Venue* § 12(a), at 685 (1955); therefore it "should be strictly construed by the courts favorably to the rights of defendants."

*Id.* § 5(b), at 673; *accord* 77 Am.Jur.2d *Venue* § 30 (1975) (stating that statutory "exceptions authorizing the bringing of certain suits in a county other than that of the defendant's residence are to be strictly construed"); *cf. Fraser v. Clark*, 128 Mont. 160, 273 P.2d 105, 118 (1954) (construing the words "in the county in which the contract is to be performed" to refer only to contracts that expressly indicate a place of performance);[1] *Craig v. W.J. Thiele & Sons, Inc.*, 395 Pa. 129, 149 A.2d 35, 37 (1959) (construing a statute providing that venue lies in a county where a transaction took place to mean a complete transaction, and not merely some part of the transaction, and stating that the practice of "forum shopping" would develop "if the law were to permit suit to be commenced against a corporation in any county where any facet of a complex transaction occurred"); *Boyd v. San Antonio Nat'l Bank*, 171 S.W.2d 375, 376 (Tex.Civ.App. 1943) (strictly construing an exception to the general rule).

Second, because venue is designed to aid in convenience and expediency, if venue is based on the place of a contract's performance, it makes more sense to require that the primary or principal purpose or purposes of the contract be considered for venue purposes. The contract in this case is not primarily for production of oil and gas but for payment of a percentage of net proceeds that Southland receives from operation of the interests. All calculations, accounting, payment, and administration of the Trust take place in Texas; thus the contract for payment of royalties is performed in Texas, not in Rio Arriba County. *Cf. Brooks Hall Corp. v. Seay*, 571 P.2d 462, 464 (Okla.1977) (holding that plaintiff seeking recovery of accrued royalties could not bring suit in county where oil was produced); *Delhi Gas Pipeline Corp. v. Allgood*, 492 S.W.2d 651, 653–54 (Tex.Civ. App.1973) (holding that plaintiffs could not bring suit for underpaid royalties in county where wells were located). Further, because the contract was primarily for payment of

---

1. We note that Montana later statutorily modified this construction, defining the words as "the county in which, by necessary implication from the terms of the contract, considering all of the obligations of all parties at the time of its execution, the principal activity was to take place." *See* Mont.Code Ann. § 25–2–121(1)(b)(ii) (1993).

royalties, the exhibits and witnesses necessary for trial will be concentrated in Texas, not New Mexico.

■ The contract does not expressly provide for the connection of the forty gas wells Team Bank alleges Southland should have connected. Although Team Bank alleges breach of Southland's promise to act as a prudent operator, the injury resulting from that breach would be a loss of royalties. Team Bank's primary claim under the contract is that, for various reasons and as the result of the breach of various duties, Southland has failed to pay sufficient royalty payments. We agree with Southland that the field activity that allegedly should have occurred in Rio Arriba County is collateral to and subsumed by the royalty calculation, and cannot itself provide a basis for venue under NMSA 1978, Section 38–3–1(F). Today we adopt judicially the principle that Montana has enacted statutorily: When venue is based on where a contract is to be performed, the court should determine whether the venue chosen by the plaintiff is one where a primary or principal activity of the contract is to take place. *See Schutz Foss Architects v. Campbell,* 243 Mont. 194, 793 P.2d 821, 824 (1990).

■ *The trial court may not transfer venue of the misfiled suit.* Both Meridian Oil and Southland have a designated agent residing in Santa Fe County. Team Bank urges this Court to find that venue is proper in Santa Fe County and that the case should be transferred there because, under Section 38–3–1(F), foreign corporations may be sued where the statutory agent of the corporation resides. We agree that venue is proper in Santa Fe County. We decline, however, to remand the case for transfer.

Generally, a party challenging venue moves for dismissal of the action if venue is improper. NMSA 1978, Section 38–3–3 (Repl.Pamp.1987) mandates *transfer* of venue from a *proper* forum whenever a judge is interested in the case or related to or has been counsel for any of the parties or when the court determines that a party cannot obtain a fair trial in the county in which the case is pending. In *Jones v. New Mexico State Highway Department,* 92 N.M. 671, 672, 593 P.2d 1074, 1075 (1979), we held that "[a]bsent a statute giving such authority, a trial court has no power to change the venue of a misfiled lawsuit." Without discussing *Jones,* in *State ex rel. Southern Pacific Transportation Co. v. Frost,* 102 N.M. 369, 371, 695 P.2d 1318, 1320 (1985), we stated that a case should be transferred to another county on the basis of forum non conveniens and remanded to the district court for proceedings consistent with that holding. We noted the disparity between these two holdings in *Bracken v. Yates Petroleum Corp.,* 107 N.M. 463, 464, 760 P.2d 155, 156 (1988), and stated that "*Jones* should be reexamined in light of *Frost,*" but we did not determine in *Bracken* whether a district court has discretion, absent statutory or common-law authority (as granted in *Frost*), to transfer a case that has been filed in an improper venue. Instead, we simply determined that a statute of limitations was tolled by "the diligent filing of the complaint" in an improper venue and that the plaintiff in that case thus had twenty-seven days in which to file her complaint in the proper venue after dismissal. *Id.* at 466, 760 P.2d at 158. We do not find the holdings in *Jones* and *Frost* to be disparate because the remedy requested in a forum non conveniens case is transfer, not dismissal, and the request arises in a case that has been properly, rather than improperly, filed. Because *Frost* is distinguished on the basis that the doctrine of forum non conveniens can not be fully applied without allowing transfer, we follow the example in *Bracken* and decline to extend *Frost* beyond its factual boundaries. This holding encourages plaintiffs to bring their suits in the proper venue and discourages "forum shopping," and yet it does not infringe upon a plaintiff's substantive rights. *See NMSA 1978, § 37–1–14 (Repl.Pamp.1990) (providing that commencement of a second suit within six months after the original suit fails is deemed a continuation of the first). The case must be dismissed in Rio Arriba County.

*Conclusion.* Because there was no factual or legal basis for venue in Rio Arriba County, we hold that the trial court erred in refusing to dismiss the suit. As there is no authority for the court to transfer the case to

another county, we reverse and remand for dismissal without prejudice.

**IT IS SO ORDERED.**

MONTGOMERY, C.J., and RANSOM, J., concur.